UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIE OLDEN, RICHARD HUNTER,
and WILBUR BLEAU, and all others
similarly situated, a Certified Class,

          Plaintiffs,

                                          Case Number 99-10176

v.                                         Honorable David M. Lawson

LAFARGE CORPORATION,

          Defendant.
_____/

## OPINION AND ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL FOR CERTAIN CLASS REPRESENTATIVES AND SUBSTITUTING CLASS REPRESENTATIVES, GRANTING DEFENDANT'S MOTION TO STRIKE CONTINGENT REQUESTS FOR EXCLUSION FROM PROPOSED SETTLEMENT, AND DENYING MOTION TO APPROVE SETTLEMENT

This matter is before the Court on a motion by the parties to approve a class settlement, together with several related matters. The related matters include a challenge by the defendant to certain class members' attempts to either object to or opt out of the proposed settlement, styled as the defendant's motion to strike the class members' contingent requests for exclusion from the settlement class; and class counsel's motion to withdraw as counsel for plaintiffs Julie Olden, Richard Hunter, and Wilbur Bleau, to remove Julie Olden, Richard Hunter, and Wilbur Bleau as class representatives, and to add named plaintiffs in their place. The Court held a hearing on the motions on September 7, 2006 and took the matter under advisement, directing the parties to address the question of the impact of substituting class representatives on the Court's subject matter jurisdiction. After receiving the submissions, the Court is satisfied that substitution of the parties will not divest the Court of jurisdiction; the relationship between class counsel and the named class representatives has irreparably broken down; the named class representatives no longer represent

the best interests of the class and a substitution of class representatives is appropriate; the dissatisfied class members cannot both object to the settlement and seek exclusion from the class; and the objections to the settlement (save one) are without merit.  The Court also finds that the settlement term that imposes renewed opt-out requirements on members of the newly-defined class who may have opted out previously is not fair or reasonable.  Because the Court may not alter the settlement terms, but may only approve or reject it as a whole, the Court must disapprove the proposed settlement.  The Court also will grant the defendant's motion  to strike the contingent requests to opt out of the proposed settlement, grant the motion to allow class counsel to withdraw from representation of the named plaintiffs, and grant the motion to substitute new class representatives.

I.

On February 9, 1999, a class action complaint was filed with this Court on behalf of Julie Olden, Richard Hunter, Wilbur Bleau, and all others similarly situated seeking compensation from defendant Lafarge Corporation's cement manufacturing plant based on the emission of pollutants in and around Alpena, Michigan.  The cement plant, which is now maintained by LaFarge Corporation, has been in operation in the northeast section of the City of Alpena since about 1920.  Since 1987, LaFarge has owned and operated the plant, which is the largest cement plant in North America and employs about four hundred workers.  The one-square-mile facility turns limestone into cement and consists of a limestone rock quarry and a cement manufacturing plant.

A by-product of the cement manufacturing process is cement kiln dust (CKD).  Some CKD is emitted into the air, apparently causing a bad odor.  According to the complaint, in addition to covering vehicles, houses, and flowers with a "white film," the CKD allegedly causes damage to

-2-

vinyl siding and has killed rose bushes. The plaintiffs filed suit under various state law theories seeking injunctive relief and compensatory and exemplary damages for the loss of use and enjoyment of home and property, mental and emotional anguish, diminution of market value of their property, and injury to personal and real property.

On October 24, 2001, this Court determined that it had jurisdiction over the putative class based on diversity of citizenship, dismissed some of the state law claims, and certified the matter as a class action as to the remaining claims. The class would consist of all owners of single family residences in the City of Alpena whose person or property was damaged by toxic pollutants and contaminants that originated from the LaFarge cement manufacturing facility located in Alpena, Michigan. Notice of the action was sent in accordance with this Court's orders, and class counsel informed the Court that approximately 429 people notified him that they desired to opt out. *See* dkt # 90.

After seven years of litigation, including a trip to the Supreme Court, the parties finally came to a proposed settlement agreement, which the Court preliminarily approved on June 28, 2006. The proposed settlement agreement calls for LaFarge to pay $2,600,000. Of that sum, $700,000 will be spent on capital improvements with the remaining $1,900,000 to be distributed among class members in accordance with a formula set out in the agreement. From the gross distribution, court-approved attorneys' fees, costs, and plaintiff class representative incentive awards would be deducted. The named plaintiffs, Julie Olden, Richard Hunter, and Wilbur Bleau, would each receive $20,000 as class banner awards. The formula for distributing the balance of the sum to the class members takes into account geographic proximity to the defendant's plant, the type of residence, and the nature of residency. The base amount of the payout would be $1000 per verified claimant

with adjustments upward or downward according to factors set out in the formula.  The maximum

an absent class member likely would receive would be $2000.

The proposed settlement agreement also redefined the "Settlement Class" as follows:

> All of those natural persons residing within the City of Alpena, Michigan, at any
> time between April 19, 1996, and the date of this Agreement, together with all of
> those natural persons or entities (including but not limited to propietorships,
> unincorporated associations, partnerships, institutions, business and professional
> corporations, not-for-profit corporations, trusts and their successors in title or
> interest) owning residential property within the City of Alpena, Michigan, at any
> time between April 19, 1996, and the date of this Agreement.

Prop. Sett. Agr. at 8-9.  Then, after defining the "Settlement Class," the proposed settlement

provides:

> The Class includes all persons who are currently plaintiffs or have been plaintiffs in
> the Litigation Class, including those persons who requested exclusion from the
> Litigation Class, unless those persons request exclusion from this Settlement Class.

Prop. Sett. Agr. at 9.  On June 28, 2006, the Court granted preliminary approval to the proposed

settlement, directed the parties to provide notice to all potential class members by July 7, 2006, and

established August 7, 2006 as the deadline for objecting to or opting out of the proposed settlement.

The Court set a hearing date of September 7, 2006 for objections and the request to approve the

settlement.

After notice of the proposed settlement was sent, several unsettling developments occurred.

Class counsel summarized those events in his motion to withdraw as follows:

> 8.      Since [the Court's preliminary approval of the settlement], there has been a
> breakdown of the attorney-client relationship which compels counsel to seek
> permission to withdraw as counsel for Plaintiffs Julie Olden, Richard Hunter
> and Wilbur Bleau and to have them removed as class representatives.

> 9.      Julie Olden, Richard Hunter and Wilbur Bleau have recently expressed a
> general dissatisfaction with Class Counsel and with the Proposed Settlement.
> Numerous newspaper articles quote Richard Hunter and Wilbur Bleau

-4-

voicing disapproval over the amount of money that they are to receive from the Proposed Settlement and blatantly stating that they would not approve any settlement unless they were to receive $500,000 each. . . . Further, it has been alleged in a newspaper article that Richard Hunter and Wilbur Bleau have filed a complaint with the Michigan Attorney Grievance Commission. . . .

10.    In addition to the media coverage, Class Counsel and Julie Olden, Richard Hunter and Wilbur Bleau have exchanged communications, both written and verbal, regarding the Proposed Settlement.  These communications are further evidence of the breakdown in the attorney-client relationship.  Class Counsel will produce these documents for the Court at its request for an in camera review so as not to breach the attorney-client privilege.

11.    Finally, Class Counsel received another law firm's appearance in this matter which was filed on behalf of Julie Olden, Richard Hunter and Wilbur Bleau.

Mot. to Withdraw [dkt # 102] at 3.

Because of these events, on August 7, 2006 class counsel filed the pending motion to withdraw as counsel for plaintiffs Julie Olden, Richard Hunter, and Wilbur Bleau, to remove Olden, Hunter, and Bleau as class representatives and to add named plaintiffs in their stead.  That same day, the class representatives and several other class members filed alternative requests: first, eighty-two individuals expressed their objections to the settlement and requested the Court reject the proposed settlement as unfair and inadequate; second those individuals plus twenty-one others, totaling 103 class members, requested exclusion from the settlement if the Court does not reject the settlement agreement.  On August 24, 2006, the defendant filed its motion to strike the class members' contingent requests for exclusion from the settlement class, and extend the date within which it could exercise its walk-away right under the settlement agreement.  As noted earlier, the Court heard argument on the motions on September 7, 2006.

II.

-5-

The Federal Rules of Civil Procedure require court approval of settlements in class actions. Fed. R. Civ. P. 23(e)(1)(A), (C). Federal Rule of Civil Procedure 23(e)(1)(A) provides that "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Federal Rule of Civil Procedure 23(e)(1)(C) states that "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." As part of this process, "[a]ny class member may object to a proposed settlement, voluntary dismissal, or compromise that requires court approval under Rule 23(e)(1)(A)." Fed. R. Civ. P. 23(e)(4)(A). The approval of a proposed settlement ordinarily involves a two-stage procedure. "First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation. . . . Once the judge is satisfied . . . and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a final Rule 23(e) fairness hearing is given to the class members." Manual for Complex Litigation § 21.632-.633 (4th ed.); *see also Tennessee Ass'n of Health Maintenance Organizations, Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001).

In determining whether a settlement agreement is sufficiently fair to warrant final approval, Sixth Circuit precedent instructs courts to consider the following three factors: "'the likelihood of success on the merits, the risk associated with and the expense and complexity of litigation, and the objections raised by class members.'" *Detroit Police Officers Ass'n v. Young*, 920 F. Supp 755, 761 (E.D. Mich. 1995) (quoting *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). In assessing the significance of these factors, the Court enjoys wide discretion. *Ibid.*

Nevertheless, in ruling on the legitimacy of a preliminarily-approved settlement agreement, the Court "may only approve or disapprove the settlement proposal;" it may not revise it. *Ibid.*

The proposed settlement agreement in this case was signed only by class representative Olden. She has since attempted to revoke her approval and filed a revocation apparently after having retained separate counsel. The objections filed by 82 class members, including the three class representatives, are based on the following claims:

> (1) The settlement agreement was never approved by two of the class representative[s], the other class representative has rescinded her approval of the settlement, and Class Counsel did not disclose these facts to the Court.
>
> (2) Class counsel has not named any expert witnesses or made any expert disclosures; nor does it appear that Class Counsel has taken any depositions or conducted any written discovery.
>
> (3) The settlement would release all claims, even personal injury claims that have not yet accrued, for minimal or no consideration.
>
> (4) The settlement arbitrarily expands the class from people actually damaged by LaFarge's emissions to everyone in the City of Alpena, with no rationale given.
>
> (5) The settlement forces all class members who previously opted out of the litigation (about 414 households) back into the class.
>
> (6) The deadline to object to the settlement is the same as the deadline to opt out.
>
> (7) There is no justification given for the requested attorneys fees.

Objections to Proposed Settlement [dkt # 104] at 2-3.

Each of the objectors, plus twenty-one other class members, simultaneously filed requests to be excluded from the settlement, as this Court's prior orders permitted. Each of the requests read: "My name is [name stated], and I live at [address stated] in Alpena, Michigan. I wish to be excluded from the proposed Settlement Agreement in the *Olden v. LaFarge* lawsuit." Notice of Request for Exclusion [dkt #103] Ex. 1-103. Each request is signed by the class member. However, the cover

-7-

document, which is signed by counsel for the dissatisfied class members, states that these requests

are all "contingent" on the Court's denial of the objections filed by the 82 class members, quoted

above.

In moving to strike these contingent requests for exclusion, the defendant argues that the

class members cannot both object and opt out.  Federal Rule of Civil Procedure 23(e), governing

class action settlements, does not speak directly to such contingencies.  The Rule does state:

> (1)(A) The court must approve any settlement, voluntary dismissal, or compromise
> of the claims, issues, or defenses of a certified class.
> . . .
> (C) The court may approve a settlement, voluntary dismissal, or compromise that
> would bind class members only after a hearing and on finding that the settlement,
> voluntary dismissal, or compromise is fair, reasonable, and adequate.
> . . .
> (3) In an action previously certified as a class action under Rule 23(b)(3), the court
> may refuse to approve a settlement unless it affords a new opportunity to request
> exclusion to individual class members who had an earlier opportunity to request
> exclusion but did not do so.
> (4)(A) Any class member may object to a proposed settlement, voluntary dismissal,
> or compromise that requires court approval under Rule 23(e)(1)(A).
> (B) An objection made under Rule 23(e)(4)(A) may be withdrawn only with the
> court's approval.

Fed. R. Civ. Pro. 23(e).

The controlling appellate decisions offer little guidance on the question whether class

members can condition their opt-out election upon the ruling on objections filed under Rule 23(e).

Certainly, the rules of procedure allow pleading in the alternative, *see* Fed. R. Civ. Pro. 8(a)

(allowing that "[r]elief in the alternative or of several different types may be demanded"); however

there are strong reasons why contingent opt-outs ought not be allowed in class action settlements.

The rationale was explained in *Mortimer v. River Oaks Toyota, Inc.*, 663 N.E.2d 113 (Ill. App.

1996), a case decided under Illinois' analog to Rule 23(e).  In that case, two class members (Holton

and Mader) filed objections to a class action settlement; in these objections they "reserv[ed] the right to opt out." The lower court approved the settlement and entered an order that bound Holton and Mader. In addressing their challenge on appeal, the court stated:

> Holton and Mader failed to exercise their right to opt out of the class, and instead chose to appear and object to the proposed settlement. The fact that their objection states they reserved the right to opt of the class is of no legal significance. Holton and Mader, like all potential class members, had three options. They could have opted out of the class, in which case the judgment entered in this action would not apply to them (735 ILCS 5/2-804(b) (West 1992)); they had the right to intervene or appear in the action (735 ILCS 5/2-804(a) (West 1992)), which they did; or they could have done nothing. We find nothing in Part 8 of the Code (735 ILCS 5/2-801, *et seq*. (West 1992)), however, which permits a potential class member to appear and object to a proposed settlement while at the same time reserving the option to be excluded from the class. Even assuming for the sake of analysis that the reservation contained in their objection had some significance, the fact remains that neither Holton [n]or Mader acted upon that reservation and opted out of the class prior to the entry of the judgment in this action.
>
> Accordingly, the trial court properly denied Holton and Mader's "Motion to Vacate Void Judgment by Excluded Class Members." We find nothing in this record to support the contention that the judgment entered in this case was void as against either Holton or Mader. The trial court had jurisdiction over the subject matter of this action, it had jurisdiction over the persons of Holton and Mader, and neither of them opted out of the class prior to the entry of the order. As members of the class, Holton and Mader were bound by the terms of the judgment.

*Id.* at 117-18.

The predicate Illinois statutes discussed in *Mortimer* are similar to Federal Rule of Civil Procedure 23 in many respects, although they do not mirror it. Nonetheless, the Court finds this rationale equally applicable to settlements of class actions under Rule 23(e). Rule 23(e) does not expressly allow for contingent objections or contingent opt-outs. That is sensible because opting out of a settlement and choosing to object logically are mutually exclusive options: if one actually opts out, she has no standing to object to the settlement as she will not be bound by it. *See Becherer v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 193 F.3d 415, 426 (6th Cir. 1999); *see also* 4 Alba

-9-

Conte & Herbert B. Newberg, Newberg on Class Actions § 11:55, at 168 (4th ed. 2002) (stating that "[a]ny party to the settlement proceeding has standing to object to the proposed settlement").

On the other hand, once objections are filed, Rule 23(e)(4)(B) states that they cannot be withdrawn absent leave of court. That authority is made available generally to guard against improper use of objections, such as using objections to gain improper individual advantage. Manual for Complex Litigation § 21.643 (4th ed.). But a corollary of that rule is that a party ought not be able to spoil a settlement by interposing objections and then leave the litigation. Neither does it seem fair and reasonable to allow a party to condition his opt out upon the court's acceptance or rejection of the objections to the settlement. If an absent class member (or even a class representative) desires to affect the settlement by filing objections, then the objector must abide the result and be bound by the consequences. If the settlement is unpalatable, the class member may opt out and avoid the binding effect of the settlement judgment. *Becherer*, 193 F.3d at 428-29. To allow the class member to have it both ways, however, would countenance the practice of influencing litigation – or attempting to do so – in which the class member really has no stake. That result is unacceptable.

Here, the court believes that the objections filed ought to be addressed, and the court will not permit withdrawal. Because the requests to opt out of the settlement were contingent and not absolute, the Court deems them ineffective. Therefore, the Court will grant the defendant's motion to strike the contingent requests to be excluded from the settlement. The objections, however, will stand, and the Court will consider them.

III.

As noted above, the Court must view the objections to the proposed settlement in light of its overarching obligation to determine that the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). That determination, in turn, requires an assessment of the claims against the defendant and must be based on considerations of "'the likelihood of success on the merits, the risk associated with and the expense and complexity of litigation, and the objections raised by class members." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).

An objector to a proposed settlement has the burden of showing that the compromise is unreasonable, since preliminary approval makes the settlement presumptively reasonable. *See Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). The Court will address each of the objections in turn.

A.

The first objection alleges that "[t]he settlement agreement was never approved by two of the class representatives, the other class representative has rescinded her approval of the settlement, and Class Counsel did not disclose these facts to the Court." Objs. to Prop. Settlement at 10. The reaction of class members to the terms of a proposed settlement is an important factor in discerning the fairness of a settlement. Am. Jur. 2d. Fed. Courts § 2134. However, because class counsel's obligations run to the class as a whole, the class representatives' assent is neither a sufficient nor a necessary condition to judicial approval of a class settlement. *Kincade v. General Tire and Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981). That circumstance derives from the unique relationship of class counsel to the "plaintiffs" in the case. As the *Kincade* court explained:

> Because the "client" in a class action consists of numerous unnamed class members as well as the class representatives, and because the class itself often speaks in several voices . . . , it may be impossible for the class attorney to do more than act in what he believes to be the best interests of the class as a whole . . . . Because of

-11-

the unique nature of the attorney-client relationship in a class action, the cases cited by appellants holding that an attorney cannot settle his individual client's case without the authorization of the client are simply inapplicable.

*Ibid.* (internal quotes, alterations, and citation omitted).

The Court's focus must at all time remain on the fairness, reasonableness, and adequacy of the settlement, taking into account the views of all the class members, including the representatives and class counsel. Other factors include: (1) the strength of the plaintiffs' case balanced against the settlement offer; (2) the defendant's ability to pay; (3) the burdens of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion; (6) the opinion of competent counsel; and (7) the stage of the proceedings and the amount of discovery that has been completed. *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir.1985). The objection to the settlement of one or more of the named representatives, however, is not a ground by itself to reject it. *See Laskey v. Int'rn'l Union, United Auto., Aerospace and Agr. Implement Workers of America (UAW)*, 638 F.2d 954, 957 (6th Cir. 1981) (observing that "accepting a settlement over the objections of the named representatives is not necessarily an abuse of discretion").

B.

The objectors next argue that class counsel has not identified any expert witnesses, made expert disclosures, taken depositions or conducted any other formal discovery. As a result, they contend, class counsel's judgment as to the propriety of settlement should be given little weight.

In evaluating a proposed settlement, the Court may – indeed ought to – consider the views of class counsel in light of his experience. *See Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Petruzzi's, Inc. v. Darling-Delaware Co., Inc.,* 880 F. Supp. 292, 301 (M.D. Pa. 1995). It is also true that the degree of deference "afforded counsel should correspond to the amount

-12-

of discovery completed and the character of the evidence uncovered." *Williams*, 720 F.2d at 923. However, formal discovery methods certainly are not the only way to learn about the merits of a case. *See Levell v. Monsanto Research Corp*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (noting that "[c]ounsel's reliance upon informal discovery does not preclude approval of [a] proposed [s]ettlement").

In this case, class counsel represents that he "worked diligently to pursue the class' claims and vindicate their rights." Class Counsel's Memo in Supp. of Jt. Mot. to App. Sett. at 9. Although he acknowledges that he did not conduct formal discovery vis-à-vis the defendant after class certification occurred in December of 2002, primarily due to the stay of proceedings that precluded formal discovery from March 22, 2002 to September 9, 2005 while the case was pending on appeal, he asserts that he gathered "massive amounts" of data from other sources. *Ibid.* For instance, he contends that he obtained from the Environmental Protection Agency and Michigan Department of Environmental Quality files that take up more than "fifteen banker's boxes and in excess of 6 feet of bound 3-ring binders." *Id.* at 9-10. He submitted 35 FOIA requests to obtain files that contain an enormous amount of data regarding the defendant's emissions and potential liability. He states that he expected to call seven named expert witnesses "to establish causation, liability, and damages." *Id.* at 11.

The Court is satisfied that class counsel performed the investigative work necessary to prepare the case for trial or settlement. This objection, therefore, is without merit.

## C.

The objectors also contend that the settlement is not fair because it "would release all claims, even personal injury claims that have not yet accrued, for minimal or no consideration." Objs. to

Prop. Settlement at 11.  The amount of the proposed settlement and the nature of the claims released certainly are factors to consider in assessing fairness and adequacy.  But "[t]he dollar amount of the settlement by itself is not decisive in the fairness determination.  The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate.  Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re Agent Orange Product Liability Litigation*, 597 F. Supp. 740, 762 (D.C.N.Y. 1984), *affd in part and revd in part on other grounds*, 818 F2d 226 (2d Cir. 1987) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172-73 (4th Cir. 1975); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 455 (2d Cir. 1974)).

In this case, the proposed agreement calls for a total payment of $2,600,000 to be distributed as described earlier.  The fund of $1,900,000 (less attorney's fees, costs and banner awards) is to be distributed to class members in varying proportions according to factors such as where they lived in Alpena, whether they owned property but did not reside there, their proximity to the plant, and other factors.  A few class members would receive $1,000 or more, but most class members likely would receive far less.

Based on the proposed settlement it is inaccurate to say, as the objectors have, that the settlement would release all claims for little or no consideration.  Although the objectors may desire greater compensation, they number only 82 class members.   According to the objectors, there are at least 11,000 people in the settlement class.  By their calculations, only three-quarters of one percent of the class members have objected.

These considerations also must be weighed against the strength of the defendant's case.  The defendant argues rather convincingly that the plaintiffs might not succeed on the merits if the case

-14-

were fully litigated.  The defendant points out that in order to prevail on their negligence and nuisance theories, the plaintiffs will have to demonstrate that: (1) the air of Alpena contains harmful levels of industrial emissions; (2) the defendant is the source of these emissions; (3) with respect to the nuisance claim, the defendant substantially interfered with the use and enjoyment of the plaintiffs' property; and (4) with respect to the negligence claim, the defendant failed to operate its facilities in a reasonably careful manner, which negligence was the proximate cause of the plaintiffs' injuries.

As concerns the first issue, the defendant has submitted evidence suggesting that throughout the relevant period, Alpena  has been designated as an "Attainment Area" under the Clean Air Act, meaning that its ambient air meets National Ambient Air Quality Standards.  The majority of Americans, on the other hand, do not live in Attainment Areas.  The defendant also has submitted reports tending to show that the burning of hazardous waste as an industrial fuel source does not pose a substantial risk to human health, plus evidence tending to suggest that the plant's mercury emissions were not excessive.  The defendant also points to a study conducted by an agency within the United States Department of Health and Human Services and the Michigan Department of Community Health, which focused specifically on the health hazards posed by the Lafarge plant in Alpena.  It concluded by classifying the site as involving "no apparent public health hazard."  Def's Supp. Brf in Supp. of Jt. Mot. for Approval of Sett. Agreement, Ex. 8, Environmental Study at 1.

With respect to whether the plaintiffs can prove that Lafarge was the source of the harmful pollutants, the defendant points out that there are eight other industrial plants in the area.  Many of these plants emit dust particulates; attributing the harm to Lafarge therefore becomes a complex task.

Next, as concerns the plaintiffs' burden of proof regarding the nuisance claim, the defendant posits that the plaintiffs face an uphill battle in establishing that the defendant substantially interfered with the plaintiffs' use and enjoyment of their property, evidenced by the fact that the Michigan Department of Environmental Quality received substantially more citizen complaints concerning another industrial plant in the area than it received regarding Lafarge.

Under these circumstances, the Court finds that the settlement amount and the breadth of the release do not provide sufficient grounds for rejecting the settlement or sustaining this objection.

D.

The objectors' fourth objection criticizes the expansion of the settlement, which has been redefined to include more people than the class as originally certified by the Court. In response, class counsel argues that the class definition was changed to be more objective, and it is a substantial improvement over the old definition. The original definition, he says, was circular and incapable of administration because it would have required the Court to determine liability vis-à-vis each potential class member in order to discern whether the individual in fact qualified as a class member.

Class definitions based on reasonable geographic boundaries and other relevant factors generally are favored because of the relative ease of identifying class members. *See Black v. Premier Co.*, 2002 WL 32122658, *5 (E.D. Penn. 2002) (criticizing a class definition that required discrimination "victimhood" as a condition of membership because "[s]uch a definition, dependent on the finding of discrimination, would require a mini-hearing on the merits of each individual's case to determine class membership"). "In order to maintain an action as a class action . . . there must be a class in which membership is distinguishable or at least definable at the outset." *Cunningham v. Ellington*, 323 F. Supp. 1072, 1074 (D.C. Tenn. 1971) (internal quotes omitted). The

-16-

original definition suffered from the defect that class membership was defined by establishing actual property damage at the hands of LaFarge.  This is not an objective criterion, whereas the amended definition achieves objectivity.  It is a superior definition from a class administration standpoint. The objection that there is no good reason for the change is overruled.

E.

The objectors further oppose the settlement because it requires a new opt out, and therefore it would force all class members who previously opted out of the litigation back into the litigation and bind them to the settlement.  It is not clear that any of the objectors had opted out previously, and so the Court is not certain that these objectors would be harmed by this provision.

Nevertheless, the Court finds that this objection has merit.  Class counsel contends that the new settlement class does not force previous opt-outs back into the settlement class, but simply affords them an opportunity to be included if they so desire.  The Court disagrees.

The provision at issue would operate to bind individuals (i.e., make them part of the settlement class) who have already opted-out of the litigation.  *See* Jt. Mot. for Approval of Sett. Agreement, Ex. 2, Prop. Sett. Agr. at 9 (stating that "[t]he Class includes all persons who are currently plaintiffs or have been plaintiffs in the Litigation Class, *including those persons who requested exclusion from the Litigation Class*, unless those persons request exclusion from this Settlement Class") (emphasis added).  To avoid this result, these individuals would be required to opt-out a second time.

Courts have approved settlement agreements that provide for a second notice and opt-out period.  *See, e.g., Georgine v. Amchem Products, Inc.*, 160 F.R.D. 478, 518 (E.D. Pa. 1995) (allowing second opportunity for exclusion where individuals who originally opted-out may have

-17-

been misled as to the nature of the lawsuit).  But the effect of such a provision is entirely different: those provisions do not bring opters-out back into the litigation.  Allowing individuals who would otherwise be bound by a settlement agreement a second opportunity to exclude themselves is not unfair; in fact, it is encouraged by Rule 23(e)(3) (stating that "the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so").  However, requiring individuals to twice voice their desire to be excluded is unjust.  Such a provision is plainly helpful to Lafarge by binding more people to the settlement and eliminating the potential for future claims.  But it defeats the obvious intent of the persons who have already opted-out.

Given the *res judicata* consequences of a class action settlement, the Court must find that the provision is unfair to those individuals who would be swept back in to this litigation.  *See, e.g., King v. South Cent. Bell Tel. & Tel. Co.*, 790 F.2d 524, 531 (6th Cir. 1986).  This conclusion is bolstered by the Supreme Court's holding in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985). There, the Court held that "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Id.* at 812; *see also* Fed. R. Civ. P. 23(c)(2)(B) (requiring notice and a chance to opt-out in class actions brought under Federal Rule of Civil Procedure 23(b)(3)).  It is not sufficient that individuals brought back in have had the opportunity to opt out. An opportunity to exclude oneself is not at all meaningful if, pursuant to a subsequent settlement agreement, the original request for exclusion is effectively rendered void.

F.

-18-

The objectors next complain that the deadlines to object to the settlement and to opt out are the same. The basis for their complaint is that contingent opt-outs are made more difficult. The Court does not view that schedule as problematic. If absent class members are dissatisfied with the terms of settlement, they can object or opt out. As noted earlier, however, neither the public interest nor the interest of the greater class is served by allowing disgruntled members to exercise both options. There are several examples of federal cases where the opt-out deadline matches the objection deadline. *See, e.g., DeJulius v. New England Healthcare*, 429 F.3d 935, 939 (10th Cir. 2005) (approving opt-out/objection deadline that was two weeks prior to final settlement hearing). As long as the dissatisfied class member has the right either to object and attempt to influence the settlement from within the class, or to leave the class and make a separate peace with the defendant, as is the case here, due process is satisfied. That objection is overruled.

G.

Finally, the objectors' oppose the settlement on the grounds that the fee request has not been adequately documented. Here, the objectors misread the proposed settlement. There is no provision to award $625,000 in fees to class counsel, as the objectors contend. Rather, the provision authorizes fees "not to exceed $625,000.00." Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Class Counsel will be required to file a motion for attorney's fees and costs, which the Court must approve before any fees can be awarded. The objection to fees, therefore, is premature. It does not affect the determination of the fairness, reasonableness, and adequacy of the settlement.

* * * * * * *

-19-

The Court finds that the proposed settlement in the main is fair, just and reasonable, and it will serve the better interests of the class as an alternative to proceeding to trial.  However, the Court cannot countenance the provision of the proposed settlement that voids the prior opt-outs.  The Court does not have the authority to choose the provisions it finds acceptable and sever the rest, or otherwise rewrite the parties' agreement.  *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986).  In *Evans*, the district court had approved a class action settlement that provided the defendants would not bear any part of the plaintiffs' attorney fees or costs.  The Ninth Circuit invalidated the fee waiver but left standing the remainder of the agreement.  The Supreme Court reversed and stated as follows:

> To begin with, the Court of Appeals' decision rested on an erroneous view of the District Court's power to approve settlements in class actions.  Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties prior to trial does not authorize the court to require the parties to accept a settlement to which they have not agreed.  Although changed circumstances may justify a court-ordered modification of a consent decree over the objections of a party after the decree has been entered, and the District Court might have advised petitioners and respondents that it would not approve their proposal unless one or more of its provisions was deleted or modified, Rule 23(e) does not give the court the power, in advance of trial, to modify a proposed consent decree and order its acceptance over either party's objection.  The options available to the District Court were essentially the same as those available to the respondents: it could have accepted the proposed settlement; it could have rejected the proposal and postponed the trial to see if a different settlement could be achieved; or it could have decided to try the case.  The District Court could not enforce the settlement on the merits and award attorney's fees anymore than it could, in a situation in which the attorney had negotiated a large fee at the expense of the plaintiff class, preserve the fee award and order greater relief on the merits.

*Id.* at 726-27.  Based on this authority, the Court must either approve the settlement as is, or reject it and advise the parties of its deficiencies.  The Court will choose the latter course.

IV.

Not surprisingly, class counsel has moved to withdraw from the representation of the present class representatives because there has breakdown of the attorney-client relationship that stems from the desire of the class representatives to receive greater individual compensation in the form of banner awards at the expense of the class. Class counsel proposes to substitute in their stead Carl R. Gardner, Clara Lewandowski, and Ronald L. McLennan, Sr. as new class representatives. The class representatives, Olden, Hunter, and Blau, who now have their separate attorneys, agree that the attorney-client relationship had deteriorated, but they attribute that to class counsel's failure to protect their interest, his attempt to force the settlement on them, and their concern for the class as a whole. They insist that the law does not permit substitution of class representatives under the present circumstances. They also argue that the proposed substitutes are not adequate representatives of the class because Mr. Gardner purportedly wants no role in determining the fairness of the settlement, Mrs. Lewandowski supposedly understands almost none of the settlement, and Mr. McLennan does not live in the City of Alpena and does not feel he is affected by LaFarge anymore.

Federal Rule of Civil Procedure 23(a)(4) provides that the representative parties must fairly and adequately represent the interests of the class as a whole. This is, of course, due to the fact that unnamed class members are bound by any judgment in the action. Moore's Federal Practice 23.25[1]; *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 482 (W.D. Mich. 1994). However, although a class representative cannot have interests that directly conflict with the class as a whole, the representative's interests need not be identical to those of the absentee class members. Moore's Federal Practice § 23.25[2][b][I]. "If events occurring after class certification render a class

representative inadequate, a court may remedy the problem by substituting a new representative."
*Id.* at § 23.25[6].

Although the present class representatives argue otherwise, the Court finds that the present
case directly parallels the circumstances confronting the court in *Heit v. Van Ochten*, 126 F. Supp.
2d 487 (W.D. Mich. 2001). In that case, the named class representative objected to the proposed
settlement, and class counsel moved to withdraw and substitute a new representative. The court
reviewed and rejected the objections and then granted class counsel's motions. In addressing the
motion to withdraw, the court first acknowledged that "the duty owed by class counsel is to the
'entire class and is not dependent on the special desires of the named plaintiffs.'" *Id.* at 494 (quoting
*Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982)). From this premise, it reasoned:

> Recognizing Plaintiff counsel's duty to the class, it appears she cannot represent [the
> class representative] because he objects to the Proposed Settlement, which Plaintiff's
> counsel argues is in the class's interest. The Court also finds that the Proposed
> Settlement is in the class's interest. . . . As such, the Court grants Plaintiff counsel's
> Motion to Withdraw as [the class representative's] counsel.

*Ibid.*

Having granted the motion to withdraw as counsel for the then-class representative, the court
turned to the need to substitute the class representative. In so doing, the court deferred to the
judgment of class counsel herself, rather than to the previous (objecting) representative. The court
stated:

> Plaintiff's counsel seeks to add Joseph Corsetti as class representative. Plaintiff's
> counsel asserts that Mr. Corsetti [has] the appropriate judgment and experience to
> represent the class well. Plaintiff's counsel seeks to add Mr. Corsetti as class
> representative because Plaintiff Heit filed objections to the proposed settlement
> agreement after approving it following the parties' negotiations.

-22-

The Supreme Court has stated that a court can re-examine a named plaintiff's ability to represent the class, and if it is "found wanting, the court may seek a substitute representative."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 416 (1980).

In this case, it seems apparent that Mr. Heit's ability to represent the class is wanting and inadequate.  Mr. Heit's two written objections to the Proposed Settlement contain mostly the objections addressed in this Opinion.  Mr. Heit's objections also make it clear that he absolutely opposes the Proposed Settlement.  Yet, a thorough review of the Proposed Settlement by the Court indicates approval is appropriate and in the class's best interest.  Having found Mr. Heit's ability to represent the class wanting and inadequate, the Court therefore grants Plaintiff's counsel's Motion to add Mr. Corsetti as the named Plaintiff.

*Ibid.*

The implications of this case are quite clear.  If the named class representatives object to a settlement recommended by class counsel that the court otherwise finds in the better interests of the class as a whole, then class counsel cannot continue to represent that party and the class representatives ought to be replaced.  In this case, it plainly appears that the professional relationship between class counsel and class representatives Olden, Hunter, and Blau has broken down, and class counsel cannot represent their individual interests properly.  The three have filed a Bar grievance against class counsel, assailed his performance, and hired a lawyer of their own.  The motion by class counsel to withdraw as their attorney will be granted.

That leaves the question of the propriety of replacing the class representatives with the proposed nominees.  The three present class representatives have contested the fairness and adequacy of the proposed settlement.  The Court has rejected all of their substantive objections, although it found merit in a procedural objection.  However, the nature of the objection did not address the fairness of the settlement to the named representatives, but rather the fairness to the absent members who have opted out of the litigation class already.  The Court finds that the claims

-23-

of the objectors that the settlement is not fair, reasonable, and adequate for the class as a whole lacks merit.

Olden, Hunter, and Blau maintain that the new representatives are not adequate for the reasons summarized above. They have submitted the depositions of Gardner, Lewandowski, and McLennan in support of these claims. However, the Court's review of these depositions suggests that the charges of inadequacy are exaggerated. Although the depositions do raise some questions as to how much Gardner, Lewandowski, and McLennan know about the litigation, the Court is satisfied that the proposed replacements are capable of protecting the interests of the class as the litigation winds down.

At the hearing last September, the Court expressed concern that substituting class representatives might affect the Court's subject matter jurisdiction because the class representatives would each have to show damages in excess of the amount-in-controversy requirement in order for the remaining class members to join under the supplemental jurisdiction statute, 28 U.S.C. § 1367. *See Olden v. LaFarge Corp.*, 203 F.R.D. 254 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004). In response to the Court's request, class counsel submitted a proposed amended complaint that established in good faith and to a legal certainty that Gardner's and McLennan's claims exceeded $75,000. Defense counsel acknowledged in a letter that the amount in controversy requirement is satisfied, "given that the representation as to the amount in controversy is being made by an officer of the Court who is a respected member of the Michigan Bar, it does not appear likely that anyone could prove to a legal certainty that the plaintiffs' claims are less than the jurisdictional amount." Hoyle Letter dated September 21, 2006 at 1.

-24-

"In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First American Bank*, 916 F.2d 337, 340 (6th Cir. 1990); *accord Kovacs v. Chesley*, 406 F.3d 393, 395-96 (6th Cir. 2005). In cases not involving liquidated damages, "the courts generally apply a good faith standard to the plaintiff's complaint. If the plaintiff's claim is in good faith for an amount higher than the jurisdictional amount, then jurisdiction exists in the federal court unless it appears to a legal certainty that more than the jurisdictional amount could not be recovered by the plaintiff." *Wood v. Stark Tri-County Bldg. Trades Council*, 473 F.2d 272, 273 (6th Cir. 1973) (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938)).

The Court is satisfied, therefore, that the proposed new class representatives will represent the class adequately, and their substitution will not destroy jurisdiction. The Court will allow the substitution.

IV.

After due consideration, the Court finds that the dissatisfied class members cannot both object to the settlement and seek exclusion from the class and the contingent opt-outs are not effective. The Court also finds that the objections to the proposed settlement are without merit except for the objection directed toward the requirement that class members who opted out previously must do so again to avoid being bound by the settlement. The Court determines relationship between class counsel and the named class representatives has irreparably broken down; the named class representatives no longer represent the best interests of the class and a substitution of class representatives is appropriate. The Court also finds that the settlement term that imposes

-25-

renewed opt-out requirements on members of the newly-defined class who may have opted out previously is not fair or reasonable.

Accordingly, it is **ORDERED** that the defendant's motion to strike contingent requests for exclusion from proposed settlement [dkt #109] is **GRANTED** and the opt-out requests are **STRICKEN**.

It is further **ORDERED** that the motion by class counsel to withdraw from representing class representatives and substitute new class representatives [dkt #102] is **GRANTED**. Counsel shall file an amended complaint naming the new class representatives on or before **February 12, 2007**.

It is further **ORDERED** that the objections to the proposed settlement are **OVERRULED** with the exception of the objection to the provision of the proposed settlement that requires those who have opted out of the class previously to opt out again to avoid being bound by the settlement, which is **SUSTAINED**.

It is further **ORDERED** that the request to approve the proposed settlement is **DENIED**.

It is further **ORDERED** that counsel for the parties appear for a Status Conference to be held at the United States District Court, 231 W. Lafayette Blvd, Chambers 802, Detroit, Michigan 48226 on **February 15, 2007 at 10:00 a.m.** to discuss the schedule for further proceedings in this case.

s/David M. Lawson_____
DAVID M. LAWSON
United States District Judge

Dated: January 29, 2007

-26-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 29, 2007.

s/Felicia M. Moses
FELICIA M. MOSES